## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **CHAUNCEY FORD on Behalf of Himself and on Behalf of All Others Similarly Situated,** | § § § § | |
| **1118 Soho Ct.** <br> **Crofton, MD 21114** | § § § | **CIVIL ACTION NO. :_____** |
| **Plaintiff,** | § § § | **JURY TRIAL DEMANDED** |
| **V.** | § § | |
| **CARRABBA'S ITALIAN GRILL, LLC** | § § § | |
| **A Florida Limited Liability Company** | § § § | |
| **16431 Governor Bridge Rd** <br> **Bowie, MD 20716** <br> (Prince George's County) | § § § § | |
| **AND** | § § | |
| **OS RESTAURANT SERVICES, LLC** | § § § | |
| **A Florida Limited Liability Company** | § § § | |
| **16431 Governor Bridge Rd** <br> **Bowie, MD 20716** <br> (Prince George's County) | § § § § | |
| **Defendants.** | § | |

## PLAINTIFF'S CLASS AND COLLECTIVE ACTION COMPLAINT

## SUMMARY

1.      The case implicates Defendants Carrabba Italian Grill, LLC's and OS Restaurant Services, LLC's ("Defendants" collectively) violations of the Fair Labor Standards Act's ("FLSA") tip credit and subsequent underpayment of their employees at the federally mandated

1

minimum wage rate and violations of the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann. Lab. & Empl.§§ 3-401 to 431 for Defendants' failure to pay Plaintiff and all similarly situated workers their earned minimum wages.  Plaintiff brings this case as a collective action under the FLSA, 29 U.S.C. 216(b) and a class action pursuant to Fed. R. Civ. P. 23 to remedy violations of the MWHL.

2.      Defendants pay their tipped employees, including servers and bartenders, below the minimum wage rate by taking advantage of the tip-credit provisions of the FLSA and, in Maryland, the MWHL. Under the tip-credit provisions, an employer of tipped employees may, under certain circumstances, pay those employees less than the minimum wage rate by taking a "tip credit" against the employer's minimum wage obligations from the tips received from customers.

3.      However, there are strict requirements for an employer to utilize the "tip credit." *See* 29 U.S.C. 203(m).  An employer must advise an employee in advance of its use of the tip credit pursuant to the provisions of section 3(m) of the FLSA. *See id*. stating (the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection.").  That is, the employer must inform the employee: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

4.      Further, it is illegal for employers to require tipped employees to give up a portion of their tips to their employer or to ineligible employees, such as management staff. *See Myers v. Copper Cellar Corp*., 192 F.3d 546, 551 (6th Cir. 1999)(for "the work shifts in which salad mixers

were included within the tip pool, the pooling scheme was illegal..."); *Bernal v. Vankar Enter., Inc.,* 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) (employer not permitted to take the FLSA tip credit when it required waiters to pay for shortages and unpaid tabs).

5.      Additionally, an employer must pay the minimum statutory hourly rate ($2.13 per hour under the FLSA and $3.63 in Maryland). *See* 29 U.S.C. 203(m).

6.      Moreover, an employer cannot pay below the minimum wage to tipped employees and require those tipped employees to perform non-tipped work that is unrelated to the tipped occupation. *See Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties…such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work."); *Osman v. Grube, Inc.,* No. 16-CV-802, 2017 WL 2908864, at *4 (N.D. Ohio July 7, 2017)(employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation).

7.      Finally, an employer cannot require its tipped employees to perform non-tipped work that is related to the employees' tipped occupation but exceeds 20 percent of the employees' time worked during a workweek. *See Fast v. Applebee's Int'l, Inc*., 638 F.3d 872, 880 (8th Cir. 2011) ("employees who spend 'substantial time' (defined as more than 20 percent) performing related but nontipped duties should be paid at the full minimum wage for that time.").

8.      Defendants violated the FLSA and MWHL in the following respects:

   a.  **Violation for failure to inform:** Defendants failed to correctly inform Plaintiff of the desire to rely on the tip credit to meet its minimum wage obligations.  In fact, Defendants failed to inform Plaintiff of the following: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips

contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

b. **Violation for making illegal deductions that reduced the direct wage of Plaintiff below the minimum required hourly wage for tipped employees:** Plaintiff was required to purchase certain clothing to work for Defendants, which reduced his wages below the minimum hourly wage required for tipped employees.

c. **Violation for performing work unrelated to tipped occupation:** Plaintiff was required to perform improper types, and excessive amounts, of non-tipped work, including, but not limited to, cutting lemons, cutting fruit, making lemonade, setting up the soup station, filling olive oil on tables, polishing wine glasses, polishing silverware, doing dishes, sweeping floors, gathering rugs, cleaning windows, putting bread in the oven, wrapping rolls of bread, and dusting furniture.

d. **Violation for performing non-tipped side work in excess of 20% of the time spent working in the week**: Plaintiff was required to perform greater than 20% of his time in performing non-tip producing side work, including, but not limited to, filling salt and pepper shakers, making tea and coffee, cleaning tables, rolling silverware, and filling ice.

9.      As a result of these violations, Defendants have lost the ability to use the tip credit and therefore must compensate Plaintiff and all similarly situated workers at the full minimum wage rate, unencumbered by the tip credit, and for all hours worked.  In other words, Defendants must account for the difference between the wages paid to Plaintiff and all similarly situated workers and the minimum wage rate.

## SUBJECT MATTER JURISDICTION AND VENUE

10.      This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), *et. seq*. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to this claim occurred in this district, including many of the wrongs herein alleged.

4

## PARTIES AND PERSONAL JURISDICTION

12.     Plaintiff Chauncey Ford is an individual residing in Crofton, Maryland.  His written consent to this action is attached hereto as Exhibit "A."

13.     The FLSA Class Members are all current and former tipped employees who worked for Defendants for at least one week during the three-year period prior to the filing of this action to the present.

14.     The Maryland Class Members are all current and former tipped employees who worked for Defendants in Maryland for at least one week during the three-year period prior to the filing of this action to the present.

15.     The FLSA Class Members and the Maryland Class Members shall be collectively referred to as the "Class Members."

16.     Defendant Carrabba's Italian Grill, LLC is a company organized under the laws of Florida.  Defendant may be served process through its registered agent the Corporate Creations Network, Inc. at 2 Wisconsin Circle, #700, Chevy Chase, MD 20815.

17.     Defendant OS Restaurant Services, LLC is a company organized under the laws of Florida.  Defendant may be served process through its registered agent the Corporate Creations Network, Inc. at 2 Wisconsin Circle, #700, Chevy Chase, MD 20815.

18.     Defendants at all times relevant to this action, have had sufficient minimum contacts with the State of Maryland to confer personal jurisdiction. Defendants conduct business throughout Maryland. Furthermore, Defendants have contracted with and employed Maryland residents, have Maryland customers, market to residents of Maryland, and own property in Maryland.  Moreover, the violation of the law and harm committed against Plaintiff occurred in Maryland.

## COVERAGE

19.     At all material times, Defendants have been employers within the meaning of the FLSA.  29 U.S.C. § 203(d).

20.     At all material times, Defendant have been enterprises in commerce or in the production of goods for commerce within the meaning of the FLSA.  29 U.S.C. § 203(s)(1).

21.     At all material times, Defendants have enjoyed yearly gross revenue in excess of $500,000.

22.     At all material times, Plaintiff was an employee engaged in the commerce or the production of goods for commerce.

23.     At all material times, Defendants have operated as a "single enterprise" within the meaning of 29 U.S.C. § 203(r)(1).  That is Defendants perform related activities through unified operation and common control for a common business purpose.

24.     Defendants operate a nationwide chain of restaurants with the name "Carrabba's Italian Grill" under the control of the same senior level management.  Indeed, the restaurants advertise themselves as a unified entity through the same website.

25.     Defendants represent themselves to the public as one restaurant operating at multiple locations.  They share employees, have a common management, pool their resources, operate from the same headquarters, have common ownership, and have the same operating name.

26.     Defendants operate under a unified business model and part of that unified business model is the wage violations alleged in this Complaint.

27.     Thus, Defendants formed a "single enterprise" and are liable for the violations of the other.

28.     At all material times, Defendants have been an employer within the meaning of the Maryland Wage Payment Law, Md. Code Ann. Lab. & Empl. § 3-501(b).

## FACTS

29.     Defendants operate a nationwide chain of restaurants under the trade name "Carrabba's Italian Grill" throughout the U.S.   Defendants operate in Alabama, Florida, Georgia, Illinois, Kentucky, Missouri, Maryland, New York, Oklahoma, Texas, and other states.

30.     The Carrabba's Italian Grill restaurants are full-service restaurants that employ waiters and bartenders to provide services to customers.

31.     A waiter gathers orders from customers and delivers food and drinks to the customers.

32.     A bartender makes various alcoholic beverages to customers.

33.     Defendants pay their waiters and bartenders less than the federal minimum wage of $7.25 per hour.

34.     Defendants attempted to utilize the tip credit to meet their minimum wage obligation to their waiters and bartenders, including the Plaintiff and Class Members.

35.     Plaintiff Ford worked for Defendants at the Carrabba's Italian Grill location in Bowie, Maryland.  He worked as waiter and bartender and was paid less than the minimum wage.  He worked for Defendants from approximately August 2016 to March 2020.  He was paid $3.63 per hour.

36.     The tip credit has a harmful effect on workers that threatens the health of the economy.  Adasina Social Capital, a company representing investors with more than $538 billion in assets, has issued a letter large corporations operating restaurants advising of the ills of using the tip credit. (*See* https://adasina.com/investor-statement-in-support-of-ending-the-subminimum-wage/, last visited January 11, 2021)  The letter states as follows:

7

Tipped workers are the largest group paid a subminimum wage and represent approximately six million people in the United States. The restaurant industry by far employs the largest number of tipped workers, representing 13.6 million people.

**Frozen at $2.13 per hour, a tipped subminimum wage worker can be paid as little as $4,430 per year for full-time work**. As a result, in the 42 states that allow payment of a subminimum wage, tipped workers are more than twice as likely to live in poverty, and the rates are even higher for women and people of color. The subminimum wage for tipped workers has risen little since it was enacted following the emancipation of slavery, a time when employer trade associations pushed to recoup the costs of free, exploited labor.

(*Id*.) (emphasis in original)

37.    Given the harmful effects of the tip credit, there are strict requirements that must be met by an employer how seeks to utilize the trip credit to meet their minimum wage obligations.

38.    In this case, Defendants did not satisfy the strict requirements to use the tip credit. Defendants maintained a policy and practice whereby they failed to provide the Plaintiff and the Class Members with the statutorily required notice regarding (1) the amount of the cash wage that is to be paid to the tipped employee, (2) the amount by which the wages of the tipped employee are increased on account of the tip credit, (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool, and (4) that the tip credit shall not apply to any employee who does not receive the notice.

39.    Defendants also maintained a policy and practice whereby tipped employees were required to perform non-tip producing side work unrelated to the employees' tipped occupation. As a result, Plaintiff and the Class Members were engaged in dual occupations while being compensated at the tip credit rate. While performing these non-tip generating duties, they did not interact with customers and could not earn tips.

40.     These duties include but are not limited to the following: cutting lemons, cutting fruit, making lemonade, setting up the soup station, filling olive oil on tables, polishing wine glasses, polishing silverware, doing dishes, sweeping floors, gathering rugs, cleaning windows, putting bread in the oven, wrapping rolls of bread, and dusting furniture, amongst other activities that were not related to his tipped duties.

41.     Defendants also maintained a policy and practice whereby tipped employees were required to spend a substantial amount of time, in excess of 20 percent, performing non-tip producing side work related to the employees' tipped occupation.

42.     Specifically, Defendants maintained a policy and practice whereby tipped employees, were required to spend a substantial amount of time performing non-tip producing side work, including, but not limited to, filling salt and pepper shakers, making tea and coffee, cleaning tables, rolling silverware, and filling ice, amongst other duties.

43.     Further, Defendants required Plaintiff and the Class Members to perform non-tip producing work prior to the opening of the restaurant and after the restaurant closed.  Indeed, Defendants required the Plaintiff and Class Members to arrive prior to the restaurants opening for business when there were no customers and no opportunity to earn tips, to perform manual labor cleaning and setup duties.  Likewise, Defendants required the Plaintiff and Class Members to remain at the restaurant after it had closed for business and there was no opportunity to earn tips, to perform manual labor cleaning duties.  At times, they spent 31 minutes to two hours performing work before the restaurant was open and the same amount of time after the restaurant was closed performing non-tip producing work.

44.     However, Defendants did not pay their tipped employees the full minimum wage rate for this work. The duties that Defendants required Plaintiff and the Class Members to perform

were duties that are customarily assigned to "back-of-the-house" employees in other establishments, who typically receive at least the full minimum wage rate.

45.    During Plaintiff's and the Class Members' employment, checklists were posted in Defendants' restaurants with numerous non-tipped duties that tipped employees were required to perform, in addition to serving customers.

46.    When the tipped employees performed these non-tipped duties, they usually did not interact with customers and did not have an opportunity to earn tips.

47.    Indeed, Defendants did not have a policy prohibiting tipped employees from performing certain types, or excessive amounts, of non-tipped work.

48.    Defendants did not track or record the amount of time their tipped employees spent performing non-tipped work, even though Defendants were capable of doing so.  Defendants' timekeeping system was capable of tracking multiple job codes for different work assignments but Defendants failed to track to the specific tasks for Plaintiff.

49.    Defendants use a point-of-sale system to record hours worked by their tipped employees.  Defendants then analyze the information collected by this system, including the labor costs at each of the restaurants. Defendants' timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendants failed to track to the specific tasks for Plaintiff and the Class Members.

50.    In the point-of-sale system, Defendants can create different "clock in" codes that would allow tipped employees to record their time at the full minimum wage when performing non-tipped work.

51.    However, Defendants did not allow their waiters and bartenders to clock-in at the full minimum wage rate when performing non-tipped work described in this Complaint.

52.     Defendants' managers at the restaurants were eligible to receive bonuses, in part, based on meeting or exceeding certain labor cost targets, which created an incentive to keep the amount paid to tipped employees low.

53.     Moreover, Defendants violated the FLSA by not even paying the minimum "tipped" hourly rate.  Defendants required their tipped employees to pay for items for their uniform, including pants, belts, and shoes.  These clothing items were required to perform work for Defendants and were primarily for the benefit and convenience of Defendants. The costs for these items were not reimbursed by Defendants.

54.     Because Defendants paid their tipped employees at the minimum of $2.13 per hour (or each state's minimum tipped wage – i.e. Maryland at $3.63 per hour), any week in which a tipped employee was required to pay for work related expenses for Defendants' business, their compensation fell below the minimum wage rate, thereby negating Defendants' entitlement to claim the tip credit.

55.     In other words, by requiring Plaintiff and the Class Members to pay for these work related expenses, their hourly rates of pay were reduced by the amount of these uniform costs.  As a result, they were not even paid the minimum hourly rate necessary for Defendants to claim the tip credit.

56.     Because Defendants violated the requirements to claim the tip credit, Defendants lost the right to take a credit toward their minimum wage obligation to Plaintiff and the Class Members.

57.     As such, Plaintiff and the Class Members were not compensated at the mandated minimum wage.

58.     Defendants knew or should have known that their policies and practices violate the law, and Defendants have not made a good faith effort to comply with the FLSA or Maryland law.

Rather, Defendants knowingly, willfully, and/or with reckless disregard of the law carried and continue to carry out their illegal pattern and practice regarding their tipped employees. Defendants' method of paying Plaintiff was not based on a good faith and reasonable belief that their conduct complied with the law.

## REVISED FIELD OPERATIONS HANDBOOK AND NEW DUAL JOBS REGULATION

59.    On November 8, 2018, the Department of Labor issued opinion letter FLSA2018-27 which provided a standard for interpreting the dual jobs regulation that was different than the "80/20" rule that had existed at the time.  However, nearly every court to have considered this opinion letter held that the opinion letter was not entitled to any deference. *See, e.g., Callaway v. DenOne, LLC*, No. Civ. A. 1:18-cv-1981, 2019 WL 1090346 (N.D. Ohio Mar. 8, 2019); Cope v. Let's Eat Out, Inc., 354 F. Supp. 3d 976 (W.D. Miss. 2019).

60.    Therefore, the Department of Labor announced its intention to revise the dual jobs regulation found in 29 C.F.R. § 531.56(e) and issued a notice of proposed rule-making on October 8, 2019. (*See* https://www.federalregister.gov/documents/2019/10/08/2019-20868/tip-regulations-under-the-fair-labor-standards-act-flsa).  After soliciting comments, the Department of Labor published its final rule on December 30, 2020, which had an effective date of March 1, 2021. (https://www.federalregister.gov/documents/2020/12/30/2020-28555/tip-regulations-under-the-fair-labor-standards-act-flsa).

61.    After delaying the effective date of the Final Rule. (https://www.dol.gov/agencies/whd/flsa/tips), on June 21, 2021, the Department of Labor announced "a notice of proposed rulemaking to limit the amount of non-tip producing work that a tipped employee can perform when an employer is taking a tip credit."

(https://www.federalregister.gov/documents/2021/06/23/2021-13262/tip-regulations-under-the-fair-labor-standards-act-flsa-partial-withdrawal).

62.     After soliciting more comments, the Department of Labor announced on October 28, 2021, the publication of a final rule (Tips Dual Jobs final rule). (https://www.dol.gov/agencies/whd/flsa/tips).

63.     Under the Final Rule, an employer cannot take a tip credit for any of the time spent by a tipped worker performing any non-tipped work that exceeds 30 minutes. That is, when a tipped worker performs non-tipped work for a continuous period of time exceeding 30 minutes, the employer cannot claim the tip credit.

64.     Here, Defendants illegally required Plaintiff and the Class Members to perform non-tip producing work for an excessive period of time.  That is because Defendants required Plaintiff and the Class Members to perform non-tipped work 31 minutes to two hours before the restaurants were open for business, throughout their shifts, or after they were closed, when the restaurants did not have customers and there was no opportunity to earn tips.  During this time, Defendants paid below the minimum wage rate and forced the Plaintiff and Class Members to perform non-tip producing duties, as noted above.

65.     Given that Defendants failed to comply with the requirements to take the tip credit, Defendants has lost the ability to claim the tip credit and owe Plaintiff and the Class Members pay at the full minimum wage rate per hour for all hours they worked for Defendants.

## COLLECTIVE ACTION ALLEGATIONS

66.     Plaintiff brings this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendants as tipped employees,

including waiters and bartenders, for at least one week during the three year period prior to the commencement of this action to the present.

67.     Plaintiff has actual knowledge, through conversations with his co-workers that a class of similarly situated workers exists who have been subjected to the same policies of Defendants with respect to the payment of the minimum wage.

68.     The FLSA Class Members are similarly situated to Plaintiff in that they share the same duties and were subject to the same violations of the FLSA.

69.     Like Plaintiff, the FLSA Class Members were not given proper notice of the tip credit provisions, were subject to the same expense practices, and performed substantial work that was unrelated to their tip producing duties.

70.     Plaintiff and the FLSA Class Members all labored under the same corporate structure, the same corporate policies, the same corporate chain of command, and pursuant to the rules in the same company handbook.

71.     The names and address of the FLSA Class Members of the collective action are available from Defendants' records.  To the extent required by law, notice will be provided to these individuals by first class mail, email, text message, or by the use of techniques and a form of notice similar to those customarily used in representative actions.

72.     Although the exact amount of damages may vary among the FLSA Class Members in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

73.     As such, the class of similarly situated Class Members is properly defined as follows:

**All current and former tipped employees who worked for Defendants for at least one week during the three-year period prior to the filing of this action to the present.**

## MARYLAND CLASS ALLEGATIONS

74.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Maryland Class Members which is comprised of the following:

**All current and former tipped employees who worked for Defendants for at least one week in Maryland during the three-year period prior to the filing of this action to the present.**

75.    <u>Numerosity</u>.  The number of members in the Maryland Class is believed to exceed forty.  This volume makes bringing the claims of each individual member of the Maryland Class before this Court impracticable.  Likewise, joining each individual member of the Maryland Class as a plaintiff in this action is impracticable.   Furthermore, the identity of the members of the Maryland Class will be determined from Defendants' records, as will the compensation paid to each of them.  As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the Maryland Class and Defendants.

76.    <u>Typicality</u>.  Plaintiff's claims are typical of the Maryland Class because like the members of the Maryland Class, Plaintiff was subject to Defendants' uniform policies and practices and was compensated in the same manner as others in the Maryland Class. Plaintiff and the Maryland Class have been uncompensated and/or under-compensated as a result of Defendants' common policies and practices which failed to comply with Maryland law.  As such, Plaintiff's claims are typical of the claims of the Maryland Class.  Plaintiff and all members of the Maryland Class sustained damages arising out of and caused by Defendants' common course of conduct in violation of law as alleged herein.

77.    <u>Adequacy</u>.  Plaintiff is a representative party who will fairly and adequately protect the interests of the Maryland Class because it is in his interest to effectively prosecute the claims herein alleged in order to obtain the unpaid wages and penalties required under Maryland law.

Plaintiff has retained attorneys who are competent in both class actions and wage and hour litigation.  Plaintiff does not have any interest which may be contrary to or in conflict with the claims of the Maryland Class he seeks to represent.

78.    <u>Commonality</u>.  Common issues of fact and law predominate over any individual questions in this matter.  The common issues of fact include, but are not limited to:

    a.    Whether Defendants properly informed Plaintiff and the Maryland Class Members of the intent to claim the tip credit;

    b.    Whether more than 20% of the work performed by Plaintiff and the Maryland Class Members was non-tip generating work;

    c.    Whether Plaintiff and the Maryland Class Members performed work for significant periods of time before the restaurant was open for business or after it had closed for business;

    d.    Whether Plaintiff and the Maryland Class Members were subject to unlawful deductions.

79.    The common issues of law include, but are not limited to;

    a.    Whether Defendants can claim the "tip credit";

    b.    Whether Defendants violated the Maryland Wage and Hour Law;

    c.    Whether Plaintiff and the Maryland Class are entitled to compensatory damages;

    d.    The proper measure of damages sustained by Plaintiff and the Maryland Class Members; and

    e.    Whether Defendants' actions were "willful."

80.    <u>Superiority</u>.  A class action is superior to other available means for the fair and efficient adjudication of this lawsuit.  Even in the event any member of the Maryland Class could

afford to pursue individual litigation against a company the size of Defendants, doing so would unduly burden the court system. Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits. Prosecution of separate actions by individual members of the Maryland Class would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendants.

81.     A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court. By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Maryland Class Members are promoted. Additionally, class treatment in this matter will provide for judicial consistency. Notice of the pendency and any resolution of this action can be provided to the Maryland Class by mail, electronic mail, text message, print, broadcast, internet and/or multimedia publication. The identity of members of the Maryland Class is readily identifiable from Defendants' records.

82.     This type of case is well-suited for class action treatment because: (1) Defendants' practices, policies, and/or procedures were uniform; and (2) the burden is on Defendants to prove it properly compensated its employees including any potential exemptions that might apply. Ultimately, a class action is a superior form to resolve the Maryland claims detailed herein because of the common nucleus of operative facts centered on the continued failure of Defendants to pay Plaintiff and the Maryland Class Members per applicable Maryland laws.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE MARYLAND WAGE AND HOUR LAW
### FAILURE TO PAY THE MINIMUM WAGE

83.     Plaintiff incorporates the preceding paragraphs by reference.

84.     This count arises from Defendants' violation of the MWHL failure to pay minimum wages to Plaintiff and the Maryland Class Members.

85.     During their employment with Defendants, Plaintiff and the Maryland Class Members were not exempt from the minimum wage provisions of the MWHL.

86.     Defendants paid Plaintiff and the Maryland Class Members below the minimum wage rate in Maryland, in violation of MD. CODE ANN. LAB & EMPL. § 3-419(C).

COUNT II
VIOLATION OF THE FAIR LABOR STANDARDS
FAILURE TO PAY THE MINIMUM WAGE

87.     Plaintiff incorporates the preceding paragraphs by reference.

88.     This count arises from Defendants' violation of the FLSA in connection with their failure to pay the minimum wages. *See* 29 U.S.C. § 206.

89.     Plaintiff and the FLSA Class Members were paid hourly rates less than the minimum wage while working for Defendants.

90.     Plaintiff and the FLSA Class Members were not exempt from the minimum wage requirements of the FLSA.

91.     Defendants' failure to comply with the minimum wage requirements of the FLSA, and, in particular, the tip credit requirements, resulted in Plaintiff and the FLSA Class Members being paid less than the Federal minimum wage rate.

92.     Defendants' failure to pay the minimum wage to Plaintiff and the FLSA Class Members, in violation of the FLSA was willful and not based on a good faith belief that their conduct did not violate the FLSA.  29 U.S.C. § 255(a).

## WAGE DAMAGES SOUGHT

93.    Plaintiff and the FLSA Class Members are entitled to receive the difference between the minimum wage and the tip credit adjusted minimum wage for each hour they worked.

94.    Plaintiff and the Maryland Class Members are entitled to receive the difference between the Maryland minimum wage rate and the tip credit adjusted minimum wage for each hour they worked.

95.    Plaintiff and the Class Members are entitled to reimbursement for all work-related expenses they paid.

96.    Plaintiff and the Class Members are entitled to liquidated damages.

97.    Plaintiff and the Class Members are also entitled to recover their attorney's fees and costs, as required by the FLSA and Maryland law.

## JURY DEMAND

98.    Pursuant to his rights under the Constitution of the United States, U.S. CONST. amend VII, and FED R. CIV. P. 38(a), Plaintiff hereby demands trial by jury.

## PRAYER FOR RELIEF

99.    For these reasons, Plaintiff respectfully requests that judgment be entered in his favor awarding him and the Class Members:

a.  Minimum wage compensation unadulterated by the tip credit;

b.  Liquidated damages;

c.  All misappropriated funds including all tips, expenses, and wages wrongfully withheld;

d.  An order requiring Defendants to correct their pay practices going forward;

e.  Reasonable attorney's fees, costs, and expenses of this action;

f.  Pre and post judgment interest; and

g.  Such other and further relief to which Plaintiff and the Class Members may be entitled, both in law and in equity.

Respectfully submitted,

By: /s/ *Kelly E. Cook*

Kelly E. Cook
Maryland Bar No. 16585
Wyly & Cook, PLLC
1415 N. Loop W, Suite 1000
Houston, TX 77008
Telephone: (713) 236-8330
Facsimile: (713) 863-8502
kcook@wylycooklaw.com

Local Counsel for Plaintiff

And

Don J. Foty
(will apply for admission pro hac vice)
Hodges & Foty, LLP
dfoty@hftrialfirm.com
Texas Bar No. 24050022
4409 Montrose Blvd, Ste. 200
Houston, TX 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116

And

Anthony J. Lazzaro
Ohio Bar No. 0077962
(will apply for admission pro hac vice)
Alanna Klein Fischer
Ohio Bar No. 0090986
(will apply for admission pro hac vice)
Lori M. Griffin
Ohio Bar No. 0085241
(will apply for admission pro hac vice)
The Lazzaro Law Firm, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Phone: 216-696-5000

Facsimile: 216-696-7005
anthony@lazzarolawfirm.com
alanna@lazzarolawfirm.com
lori@lazzarolawfirm.com

Attorneys for Plaintiff and Class Members